**DOWELL DIVISION OF THE DOW CHEMICAL COMPANY, Plaintiff,**

v.

**FRANCONIA SEA TRANSPORT, LTD., Defendant.**

**No. 79 Civ. 0331 (ADS).**

United States District Court, S. D. of New York.

Dec. 24, 1980.

Oliner & Oliner, New York City by S. David Oliner, New York City, for plaintiff.

Cardillo & Corbett, New York City by Stephen C. Pascal, New York City, for defendant.

SOFAER, District Judge:

Dowell, a division of the Dow Chemical Company, a corporation organized under the laws of Delaware, has brought this action against Franconia Sea Transport, Ltd. ("Franconia"), a Liberian corporation. Franconia owns the vessel M/V George Vergottis, which, at the time the events

leading up to this litigation took place, was chartered by the Trefalcon Sales Corporation. Dowell claims that it was requested by the charterer to pump a cargo of oil into the M/V George Vergottis while the vessel was in port in Brownsville, Texas, in mid 1976. The complaint states that Dowell was never compensated for that service, allegedly worth $310,413.60.

Dowell claims that the pumping of the oil into the M/V George Vergottis, and the associated rental of pumps, created a maritime lien pursuant to 46 U.S.C. §§ 971–975. Under that statute, whenever an authorized person requests "repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel," the person furnishing such service obtains a lien on the vessel that may be enforced by an *in rem* action. Dowell is unable to pursue an *in rem* action, because it cannot locate the M/V George Vergottis. Dowell's only claim for recovery, therefore, is based on the assertion that the creation of a maritime lien establishes *in personam* liability on the part of Franconia. Dowell alleges no other facts upon which recovery could be predicated.

Initially, defendant moved to dismiss the complaint pursuant to Rules 8(c) and 12(c) of the Federal Rules of Civil Procedure, contending that the action was barred by the Texas statute of limitations. After plaintiff filed a cross-motion for summary judgment pursuant to Rule 56, however, defendant also moved for summary judgment. A number of issues are in dispute, including whether, and to what extent, a maritime lien was created; whether this court has jurisdiction of the action and of the defendant; and whether the action is barred by a statute of limitations or laches.

On December 6, 1979, this case was referred to United States Magistrate Ruth Washington pursuant to 28 U.S.C. § 636(b). In a thoughtful and well-researched Report and Recommendation, the Magistrate determined that this Court has both subject matter jurisdiction of this action and personal jurisdiction of the defendant. In addition, Magistrate Washington decided that a mar-

itime lien did exist, but that it could only be enforced by an *in rem* action and does not in and of itself provide a basis for personal liability. The Magistrate concluded, however, that both motions for summary judgment should be denied because "issues and critical inferences drawn from admitted facts remain in dispute." Each party has filed objections to certain portions of the Report and Recommendation.

Magistrate Washington's findings and recommendations are in general accepted, but not her ultimate conclusion. Even assuming that a maritime lien was created, that the court has subject matter jurisdiction, and that the case is not barred by a statute of limitations or laches, plaintiff has alleged no basis upon which Franconia would be personally liable. Disputes of fact exist, but not as to any material issue; even if an agreement existed with the charterer this would only establish a maritime lien, not liability of the owner *in personam*.

Plaintiff contends that a maritime lien not only permits an aggrieved party to pursue an *in rem* action against the vessel involved, but also creates personal liability on the part of the owner of the ship. Because plaintiff has not alleged any facts by which defendant would be liable on a theory other than the maritime lien, plaintiff's assertion in effect means that owners of vessels are absolutely liable for the amount of any maritime lien obtained on their ship, however far removed they are from the actual control or management of the vessel.

Maritime law has long established that a maritime lien may impose *in rem* liability in situations where the owner is not personally liable. *See, e. g., The China*, 74 U.S. (7 Wall.) 53, 19 L.Ed. 67 (1869). Professor James Wm. Moore has written:

> Although usually one possessing a maritime lien upon a vessel or other res also possesses an in personam cause of action against the owner or other person in possession and control of that res, that need not always be the case. The res may be liable in rem even in instances where there is no concurrent in personam cause of action against its owner or the person or entity in possession.

7A Moore's Federal Practice § C.02 at 609 n.3. In *Pierside Terminal Operators, Inc. v. M/V Floridian*, 389 F.Supp. 25, 26 (E.D.Va. 1974), the court explicitly held that the maritime lien statute did not make a ship owner "personally liable for goods or services furnished to the vessel on order of a bare boat charterer of the vessel." *See also, Warner v. The Bear*, 130 F.Supp. 549 (D.Alaska 1955).

In analogous situations, involving liens other than those created under the maritime lien statute, the courts have taken a similar view. In *People of the State of California v. Italian Motorship Ilice*, 534 F.2d 836 (9th Cir. 1976), a case resulting from California's attempts to collect from a vessel, its operator, and its owners for damages resulting from a collision, the Ninth Circuit wrote that "[i]t is well settled that the *owner* of a vessel is not liable, personally, for the negligence of a compulsory pilot," but nevertheless held that the ship was liable in an action *in rem. Id.* at 841. *See also Grillea v. United States*, 229 F.2d 687 (2d Cir. 1956); *Empressa Hondurena de Vapores, S. A. v. Bank Line Ltd.*, 434 F.Supp. 602 (S.D.N.Y.1977).

Many of the cases cited by plaintiff for the proposition that an aggrieved party has the option of either pursuing an action *in rem* or *in personam* involve situations where the shipowner was in some way personally involved in the harm to the plaintiff. For example, in *The Kalorama*, 77 U.S. (10 Wall.) 204, 19 L.Ed. 941 (1870), the Court held that the fact that the shipowner had ordered some of the repairs made to the ship did not defeat an *in rem* action based on a maritime lien; and in *Grigsby v. Coastal Marine Service, Inc.*, 412 F.2d 1011 (5th Cir. 1969), *cert. dismissed*, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531 (1970), the defendant shipowner was found personally liable for damages resulting from the unseaworthiness of its vessel. The *Grigsby* court made clear, however, that the "absence of possession and control may well insulate the shipowner from liability in personam in the absence of conduct which somehow implicates the remote owner in the deficiency" that causes the damages. *Id.* at 1031.

■ When a maritime lien attaches, the plaintiff may pursue an *in rem* action against the vessel involved. The plaintiff also has the option of bringing an *in personam* action against any party that is directly liable in contract, tort, or some other substantive law, and a shipowner may be such a party. In the absence of a separate basis of substantive liability, however, the shipowner cannot be held personally liable to the plaintiff merely because a maritime lien has come into existence. As one prominent authority has written:

> Remedies *in rem* and *in personam* may co-exist or one may be independent of the other....In such cases, the question before the court is not whether the court has jurisdiction, but whether the party has right: it is...a question of the merits of the action.

2 *Benedict on Admiralty* (7th ed. 1975) § 25.

A contrary conclusion would make the owner of a vessel absolutely and personally liable for all repairs, services, and other necessaries ordered by a charterer. The maritime lien statute was not intended to cause such a result. Rather, the statute is designed to ensure that a vessel will be able to obtain needed services and repairs by guaranteeing that suppliers will have a remedy against the vessel if payment is not received. *Norton v. The Evan N.*, 109 F.Supp. 505 (D.R.I.1952); *The City of Helena*, 25 F.Supp. 864 (E.D.Mo.1939).

■ Plaintiff also contends that Rule C of the Supplemental Rules of Certain Admiralty and Maritime Claims permits an action *in personam* as an alternative to an *in rem* action. Rule C provides that "[e]xcept as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed against any person who may be liable." But Rule C merely states the general rule that, when a maritime lien attaches, the aggrieved party has the option of either pursuing an action *in rem* or seeking recovery from any party who is directly liable under some basis of substantive law in an *in personam* action, or both. Rule C does not itself create substantive liability where none would otherwise exist.

According to the Committee that suggested and drafted the Supplemental Rules of Certain Admiralty and Maritime Claims, Rule C was designed to preserve the substance of former Admiralty Rules 13–18. Under those rules, in general, "an action in rem may be brought to enforce any maritime lien, and no action in personam may be brought where the substantive law imposes no liability." Notes of the Advisory Committee on Rules. Even plaintiff concedes that Rule C does not change prior law. Plaintiff's Supplemental Memorandum of Law at 6. Thus Rule C allows *in rem* and *in personam* causes of action to be tried in the same proceeding, where appropriate. But an *in personam* action may only be brought, to quote the Rule, "against any person who may be liable" under some principle of substantive law.

■ In short, this Court accepts Magistrate Washington's conclusion that there is jurisdiction of this action and of the defendant. The other issues underlying the litigation, such as the question of whether a maritime lien was created and the defenses of laches or of a statute of limitations need not be decided. If any lien was obtained, it may not be enforced in this action, so the motion for summary judgment is granted. Fed.R.Civ.P. 56.

SO ORDERED.