**ARKWRIGHT–BOSTON MANUFACTUR-
ERS MUTUAL INSURANCE CO.,
et al., Plaintiffs,**

v.

**ENERGY INSURANCE AGENCY, INC.,
et al., Defendants.**

Civ. A. No. H–83–5202.

United States District Court,
S.D. Texas,
Houston Division.

April 6, 1987.

Theodore G. Dimitry, Vinson & Elkins, Houston, Tex., for plaintiffs.

Jerry V. Walker, Houston, Tex., for Resource Ins. Services, Inc.

John Pearson, Sewell & Riggs, Houston, Tex., and Don Fowler, Lord, Bissell & Brook, Chicago, Ill., for Energy Ins. Agency, Inc. and Energy Ins. Intern., Inc.

John M. Elsley, Royston, Rayzor, Vickery & Williams, Houston, Tex., for Underwriters at Lloyd's and certain Ins. Companies subscribing to certificate or policy of Ins. EII–373P.

## MEMORANDUM ON APPLICABLE LAW AND STANDING TO SUE

HUGHES, District Judge.

The parties have moved for a determination of the applicable law. The alleged policy between Mutual Marine Office, Inc., and Lloyd's contained a Norwegian choice of law and forum selection provision. The parties are corporations in England, New York, and Texas. Texas law will be applied.

The defendants also request that the complaint be dismissed because Mutual's reinsurers are indispensible parties. Mutual moved for partial summary judgment arguing that it was a proper party to pursue this litigation and need not join its reinsurers as plaintiffs. Mutual will prevail.

*Background.*

Gjensidige Norsk Skadeforsikring, a Norwegian company, issued a policy insuring the *Petromar V* against total loss for $10 million. Norsk requested Energy Insurance International, Inc., a Houston brokerage firm, to obtain reinsurance. Energy obtained reinsurance through Resource Insurance Services, Inc., also a Houston firm. Resource contacted Seascope, a London broker, which obtained the reinsurance from Lloyd's, an English insurer, and Mutual, a New York managing insurance company. Mutual later sought reinsurance of its risks through Energy. A policy was

issued[1] by Lloyd's reinsuring Mutual's potential liability. The policy contains a Norwegian forum selection and choice of law provision. The *Petromar V* was later declared a constructive total loss. When Mutual contacted Energy about its coverage on the reinsurance policy, Mutual was informed that the policy had been cancelled.

Mutual filed suit to recover the value of the policy. Mutual alleges that the policy was cancelled without authorization by its broker, Energy. Lloyd's counters that Energy, as its broker, did not have the authority to issue a policy if one was ever in effect.

*Claims.*

Mutual[2] argues that Texas law should be applied to determine liability. Energy urges that federal maritime or English law should be applied. Lloyd's seeks the application of federal maritime law to agency and English law to the remaining issues. Resource joined in Lloyd's and Energy's petitions although each requests the application of different laws.

The defendants also claim that Mutual is not a real party in interest since its loss has been compensated by quota share and excess loss insurers not named as plaintiffs; these parties have suffered a loss, not Mutual. Mutual counters that it is allowed to file suit on behalf of itself and those who insured its loss.

*Summary Judgment.*

The party seeking a summary judgment must establish that: (1) no genuine dispute exists about any material fact, and (2) the law entitles it to judgment. Fed.R.Civ.P. 56(c); *Galindo v. Precision American Corp.*, 754 F.2d 1212, *reh'g denied*, 762 F.2d 1004 (5th Cir.1985); *Trevino v. Celanese Corp.*, 701 F.2d 397, *reh'g denied*, 707 F.2d 515 (5th Cir.1983). Here, no factual disputes are presented for review. Requesting purely legal determinations, the parties are entitled to partial summary judgment on the applicable law and standing to sue.

*The Policy.*

■ The insurance policy contains a choice of law and forum selection provision requiring Norwegian law to be applied in a Norwegian forum to adjudicate any dispute "arising hereunder." This provision will not be applied.

This dispute does not concern an interpretation of any contractual provision. The issues in this case are the existence of an agency and a breach of that agency. The terms of the policy are not at issue. *See Syndicate 420 at Lloyd's London v. Glacier Gen. Assurance Co.*, 633 F.Supp. 428 (E.D.La.1986). Additionally, if the policy was not in effect, this dispute could not have arisen under the non-existent contract, and the clause would not be applied.

*Federal Maritime Law.*

■ State law governs the interpretation of a maritime insurance contract and the relationship between the insurer and the maritime insured. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). Only when a federal admiralty law has been created to supersede state provisions about inland matters involving maritime parties does state law not control. Traditional inland matters include determinations of when an agency exists and responsibilities within that relationship. *See Edinburgh Assurance Co. v. R.L. Burns Corp.*, 479 F.Supp. 138 (C.D.Cal.1979), *rev'd on other grounds*, 669 F.2d 1259 (9th Cir.1982); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 199 F.Supp. 784 (E.D.Tex.1960), *rev'd on other grounds*, 300 F.2d 631 (5th Cir.), *cert. denied*, 370 U.S. 925, 82 S.Ct. 1562, 8 L.Ed.2d 505 (1962); Restatement (Second) of Conflict of Laws §§ 196, 291–93 (1971).

1. Although the court has stated that a policy was issued, this is for simplicity only and should not be construed as a finding by this court that a policy was in effect. This issue is not before the court at this time.

2. Again for simplicity, Arkwright-Boston and Mutual are collectively referred to as Mutual.

Lloyd's refers to all of the English reinsurers. Energy refers to both Energy and Resource since Energy, at times, refers to itself along with Resource when discussing the activities giving rise to this litigation and Resource is located in Houston along with Energy.

A federal court, in a suit based upon diversity, would apply the law of the state, including choice of law rules, in which it sits to adjudications of agency law. *Griffin v. McCoach*, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 2 Couch on Insurance 2d §§ 16:54, 16:55 (1984). That the presence of maritime parties and maritime insurance should transform a traditional agency into one governed by federal maritime law is not self evident. An expansion of federal maritime law to encompass marine insurance agents must be clear and precise.

The cases cited by the defendants have not established a federal maritime law on agency. Some cases concern the interpretation of contractual provisions, not an agent's failure to procure or wrongful cancellation of the policy. *See, e.g., Morrison Grain Co., Inc. v. Utica Mutual Ins. Co.*, 632 F.2d 424 (5th Cir.1980); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257 (1976) *reh'g denied*, 546 F.2d 906 (5th Cir. 1977); *Walter v. Marine Office of America*, 537 F.2d 89, *reh'g denied*, 542 F.2d 1174 (5th Cir.1976); *Irwin v. Eagle Star Insurance Co., Ltd.*, 455 F.2d 827 (5th Cir.), *cert. denied*, 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95 (1972). The remaining cases do not definitively establish a federal maritime law on agency but restate the general agency principle that one who procures insurance acts on behalf of the insured not the insurer. *Hauser v. Am. Central Ins. Co.*, 216 F.Supp. 318 (E.D.La. 1963); *Whiteman v. Rhode Island Ins. Co.*, 78 F.Supp. 624 (E.D.La.1948); *Connecticut Fire Ins. Co. v. Davison Chemical Corp.*, 54 F.Supp. 2 (D.Md.1944); *Eagle Star & British Dominions v. Tadlock*, 22 F.Supp. 545 (S.D.Cal.1938); *Pyne v. Trans-Atlantic Marine, Inc.*, 1972 A.M.C. 274 (D.Mass.1971). Other cases that create a federal maritime law on agency do so to the limited extent of establishing a uniform jurisprudence by which agents acting in traditional maritime functions are governed. *Cactus Pipe & Supply v. M/V Montmartre*, 756 F.2d 1103 (5th Cir.1985) (charter party broker); *West India Indus. v. Vance & Sons AMC–Jeep*, 671 F.2d 1384, *reh'g denied*, 679 F.2d 248 (5th Cir. 1982) (stevedore); *Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir.1980) (charter party broker); *Interocean Shipping Co. v. Nat'l Shipping and Trading Corp.*, 523 F.2d 527 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976) (charter party broker). Only in *Interocean* was maritime insurance obviously an element of dispute, and there New York law governed in determining the validity of the agreement. 523 F.2d at 537–38. This court can not find that a federal maritime law on agency exists or that one should be fashioned to serve the minimal maritime interests here. *See Wilburn, supra*, 348 U.S. at 314, 75 S.Ct. at 370. Inland law must be applied to adjudicate the issues in this litigation.

*Which Inland Law?*

Which jurisdiction's inland law shall be applied in this case must be analyzed by sifting through the facts to determine which jurisdiction has the greatest "substantial and legitimate" interest in the litigation. *See Morrison Grain, supra*, at 429. The parties vehemently oppose the use of Texas law because it allows for the recovery of treble damages. Tex.Ins.Code art. 21.21 (Vernon 1987). The parties urge the application of federal maritime law which does not allow exemplary damages. There being no federal maritime law on this particular issue, the choice of law is between England and Texas.

■ Whatever precipitated this litigation took place in Texas. Either (1) Energy issued a policy that it should not have or (2) it did not attempt to procure a policy it should have procured. At all times Energy was acting in Texas. The parties should be subject to the liability imposed by Texas law. As incongruous as punitive damages are with the central concept of compensation in civil law, to escape punitive damage liability by the fortuitous presence of a foreign party seems peculiar. Because the activities giving rise to this litigation occurred in Texas, Texas law should be used in determining liability.

There is persuasive authority to apply the law of the state where the insurance agent is located when the agent has acted to the detriment either of the insured or the insurer. In *Edinburgh*, American Pacific, a Nevada corporation, and Burns, a Delaware corporation, with their principal places of business in California, obtained insurance from Lloyd's of London. Emmett & Chandler, a California corporation, and Hogg Robinson-Gardner Mountain, an English corporation, brokered the policy. On the ancillary issue of breach of an agency, the court held that, as between American Pacific and Emmett & Chandler on the one hand and Emmett & Chandler and Lloyd's on the other, California law would apply to determine liability. *Id.* at 151. "California is the state with the greatest contact with the brokerage activities of Emmett & Chandler and is also the state with the greatest interest in regulating the activities of a licensed surplus line insurance broker, Emmett & Chandler." *Id.* Although the policy was issued in England, the location of the broker was the key factor in determining under what law the broker would be judged. Here, the agent, Energy, was in Texas. Texas law will be applied.

*Standing to Sue.*

■ An insurance company is entitled to bring an action in its own name for the full amount of loss, and it need not join or sue on behalf of its reinsurers as party plaintiffs. *Interstate Fire Ins. Co. v. Sayers,* 468 F.2d 1361 (5th Cir.1972). The contractually named reinsurer is a real party in interest capable of pursuing the litigation in its name even if it suffered a minimal loss. *Id.* at 1362–63. The reinsurers which reimbursed the insurer need not be joined as plaintiffs. *Id.* Here, Mutual need not join its reinsurers as plaintiffs and may pursue this litigation as the contractual reinsurer. The defendants, however, may discover the information necessary to establish their defenses that may be in the possession of the non-party reinsurers.

*Conclusion.*

The choice of law and forum selection provision in the contract does not apply since this action does not arise under the contract. No federal admiralty law controls agents procuring maritime policies; therefore, inland law must apply. Between Texas and England, Texas has the prevalent interest in controlling the actions of agents operating in Texas. Texas law will be applied. Lastly, Mutual has standing to sue and need not join its reinsurers as plaintiffs.