928 F.2d 164
 1991 A.M.C. 2918
 PLANNED PREMIUM SERVICES OF LOUISIANA, INC., Plaintiff-Appellant,
v.
INTERNATIONAL INSURANCE AGENTS, INC., et al., Defendants,
Continental Underwriters, Ltd., Certain Underwriters at
Lloyd's, American Fidelity Insurance Co.,
LaReunion Francaise, and Stone
Insurance, Inc., Defendants-Appellees.
 No. 89-3818.
 United States Court of Appeals,
Fifth Circuit.
 April 5, 1991.
 
 David M. Flotte, Hebert, Mouledoux & Bland, New Orleans, for plaintiff-appellant.
 Scott S. Partridge, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, F.A. Courtenay, Jr., Courtenay, Forstall, Grace & Hebert, New Orleans, for Certain Underwriters at Lloyds London.
 Andrew I. Brown, Henican, James & Cleveland, Metairie, La., for Stone Ins., Inc.
 Lesert J. Lautenschlaeger, Jr., New Orleans, for LaReunion Francaise.
 Randolph J. Waits, Emmett, Cobb, Waits & Kessenich, New Orleans, for Continental Underwriters, Ltd.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before POLITZ, WILLIAMS, and SMITH, Circuit Judges.
 POLITZ, Circuit Judge:
 
 
 1
 This appeal requires that we decide whether an agreement to finance maritime insurance gives rise to admiralty jurisdiction, 28 U.S.C. Sec. 1333. Concluding that it does not, we affirm the district court's dismissal for lack of subject matter jurisdiction.
 
 Background
 
 2
 International Insurance Agents, Inc. ("International"), a maritime insurance broker representing vessel owners, secured maritime insurance for Wiltz LeBlanc & Sons Boat Rentals, Inc. ("Wiltz"), Bowers Industries, Inc. ("Bowers"), and Maintenance Associates, Inc. ("Maintenance"). International arranged financing for the premiums through Planned Premium Services of Louisiana, Inc. ("PPSL") and placed the insurance with several underwriters--Certain Underwriters at Lloyd's, Continental Underwriters, Ltd., American Fidelity Insurance Company, Intrepid Underwriters, Ltd., and LaReunion Francaise.
 
 
 3
 Each insured executed a Premium Finance Agreement with PPSL which spelled out the payment schedule and assigned to PPSL the power to cancel the policies. Simultaneously, International guaranteed the repayment of any unearned premiums resulting from cancellation of any policy. In the agreements PPSL and the vessel-owner insureds stipulated that any resulting dispute would be resolved by reference to Louisiana law on premium financing, La.R.S. 9:3550.
 
 
 4
 The insureds failed to pay as agreed and PPSL canceled the maritime insurance contracts. Unearned premiums were due PPSL and International gave it a promissory note for the amount thereof but defaulted in payment. PPSL sued the insureds under the financing agreements and sued International on the promissory note. PPSL also asserted claims against the underwriters for unearned premiums.
 
 
 5
 The court granted PPSL summary judgment against International and confirmed default judgments against the three insureds. In an attempt to collect its judgment against International, PPSL sued Stone Insurance, Inc. claiming that it was the "corporate successor" of International. Both PPSL and Stone sought summary judgment on the corporate successor issue and Stone moved for dismissal for lack of subject matter jurisdiction. The district court concluded that it had maritime jurisdiction on the main cause of action--PPSL's suit for recovery of the insurance premiums on the maritime policies--but granted Stone's motion to dismiss on the grounds that Stone was not International's corporate successor and there was no saving pendent party jurisdiction.
 
 
 6
 The scenario a quo continued to unfold. Lloyd's moved to dismiss, contending that the court lacked subject matter jurisdiction over PPSL's complaint. Upon reconsideration and a finding that PPSL's contract to finance maritime insurance "was simply a loan between a finance company and parties seeking to borrow money for insurance premiums," the district court vacated its prior rulings and held that it did not have admiralty jurisdiction respecting the claims against Lloyd's. The other underwriters followed suit and the court dismissed the complaint against all of the underwriters and Stone for lack of subject matter jurisdiction. PPSL timely appealed.
 
 Analysis
 
 7
 The sole issue presented by this appeal is whether a contract to finance maritime insurance gives rise to federal jurisdiction under 28 U.S.C. Sec. 1333 which pertinently provides that: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction...."
 
 
 8
 We begin our analysis with the given that admiralty jurisdiction exists for an action involving the breach of a maritime contract. Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283 (5th Cir.1989); Rex Oil, Ltd. v. M/V JACINTH, 873 F.2d 82 (5th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 836, 107 L.Ed.2d 832 (1990). The waters become murky when we seek the precise parameters of a maritime contract. Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); Simon v. Intercontinental Transport (ICT) B.V., 882 F.2d 1435 (9th Cir.1989). We find that courts have categorized maritime contracts in light of the relationship between the subject matter of the contract and the concerns of the maritime industry. See, e.g., Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp., 739 F.2d 798 (2d Cir.1984), cert. denied, 470 U.S. 1031, 105 S.Ct. 1405, 84 L.Ed.2d 791 (1985); Kossick, 365 U.S. at 736, 81 S.Ct. at 890-891 ("The only question is whether the transaction relates to ships and vessels, masters and mariners, as agents of commerce...."); North Pacific S.S. Co. v. Hall Bros. Marine R. & Shipbuilding Co., 249 U.S. 119, 125, 39 S.Ct. 221, 222, 63 L.Ed. 510 (1919) ("[I]n matters of contract it depends upon the subject matter, the nature and character of the contract ... the true criteria being the nature of the contract, as to whether it have reference to maritime service or maritime transactions."); Rex Oil, 873 F.2d at 86 ("To invoke admiralty jurisdiction, the contract must be wholly maritime in nature and relate to trade and commerce upon navigable waters."); Ingersoll Milling Machine Co. v. M/V BODENA, 829 F.2d 293, 302 (2d Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988) ("It is the character of the work to be performed under the contract that is determinative of whether the agreement was maritime.").
 
 
 9
 This definitional approach has been found wanting because it does not provide a bright line demarcation between maritime and non-maritime contracts. Kossick; Simon; Peralta. Not every contract that relates to maritime matters warrants the invocation of admiralty jurisdiction. E.S. Binnings, Inc. v. M/V SAUDI RIYADH, 815 F.2d 660 (11th Cir.1987); Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir.1986); Peralta.
 
 
 10
 The focus becomes even more fuzzy when the scope is brought to bear on that genre of conventions known as preliminary contracts, i.e., contracts "that involve preliminary services leading to maritime contracts." E.S. Binnings, 815 F.2d at 663. Preliminary contracts typically relate to maritime affairs in that the services provided often are necessary for the operation of ships and other concerns of the shipping industry. E.S. Binnings; Peralta; Gilmore & Black, The Law of Admiralty 28 n. 94b (2d ed.1975). These services, however, are often identical to or essentially similar to non-maritime services regularly performed by those not involved in the operation of vessels. Simon; E.S. Binnings. In determining whether preliminary contracts are to be deemed maritime contracts a tension exists, pitting the value of these contracts to the shipping industry against the non-maritime essence of the services provided.
 
 
 11
 A number of courts have held that preliminary contracts are not maritime contracts. Simon; Ingersoll; E.S. Binnings; Peralta; Inversiones Calmer, S.A. v. C.E. Heath & Co., 681 F.Supp. 100 (D.Puerto Rico), aff'd, 867 F.2d 606 (1st Cir.1988) (citing Kossick and Minturn v. Maynard, 58 U.S. (17 How.) 477, 15 L.Ed. 235 (1854)). Of immediate relevance to the case at bar are holdings that contracts relating to services preliminary to maritime insurance are not necessarily maritime contracts. Angelina Casualty Co. v. Exxon Corp. U.S.A., Inc., 876 F.2d 40, 41 (5th Cir.1989) ("A contract to procure insurance, however, is not a maritime contract."); Inversiones; Syndicate 420 at Lloyd's London v. Glacier Gen. Assur. Co., 633 F.Supp. 428 (E.D.La.1986); Frank B. Hall & Co. v. S.S. SEAFREEZE ATLANTIC, 423 F.Supp. 1205 (S.D.N.Y.1976). The precedents are not unanimous as PPSL correctly notes, inviting our attention to Stanley T. Scott & Co. v. Makah Development Corp., 496 F.2d 525 (9th Cir.), cert. denied, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). In Stanley our Ninth Circuit colleagues held that a maritime insurance broker's claim for unpaid maritime insurance premiums was within the court's admiralty jurisdiction. Therein the importance of the service apparently triumphed over the non-maritime nature of the service. See also Hinkins Steamship Agency v. Freighters, Inc., 351 F.Supp. 373 (N.D.Cal.1972), aff'd, 498 F.2d 411 (9th Cir.1974).
 
 
 12
 The holdings in Stanley and Hinkins have drawn critical reviews and have not been followed by other circuits and trial courts. See, e.g., E.S. Binnings; Peralta; Inversiones; Frank B. Hall.
 
 
 13
 We are not persuaded that focusing on the relative importance of the service will produce the bright line rule essential for the predictibility and stability of this important area of the law. The national interest in securing a stable, uniform law applicable to the maritime industry, Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); Peralta, would not be served by adopting a jurisdictional standard dependent on a qualitative and quantitative weighing of the value of a particular service, in a particular instance, to the maritime industry.
 
 
 14
 Turning to the case at bar, we conclude that a financing contract preliminary to obtaining maritime insurance is not within the admiralty jurisdiction. Today we so hold. The district court found that PPSL's contract to provide financing for marine insurance was not within admiralty jurisdiction. To the extent this is a factual finding it is supported by the record and is not clearly erroneous. To the extent that it is a conclusion of law, today's holding affirms its correctness.
 
 
 15
 The judgment of the district court is AFFIRMED.